Argued March 21, remanded for further proceedings June 20, reconsideration denied July 26, petition for review allowed October 17, 1978, 284 Or 80a

STATE OF OREGON, *Respondent,*
*v.*
BRIAN LEONARD SMYTH, *Appellant.*
(No. 38440, CA 9205)

580 P2d 559

Gary L. Hooper, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

TANZER, J.

## TANZER, J.

Defendant appeals from his conviction of unauthorized use of a vehicle, ORS 164.135, which defendant was found driving in Oregon and which had been reported as stolen from a sales lot in Calgary, Alberta, Canada, almost two years earlier. He was tried twice, the first trial having ended with a hung jury.

At the first trial, an agent of the owner of the lot from which the car disappeared testified that the car had been traded in on a new car purchased from his employer, that prospective purchasers were permitted to drive the car, that as a matter of practice no one would have been authorized to drive it out of Canada, and that as far as he knew defendant had not been authorized to use it. The loss was reported to the owner's insurer, who paid the loss. An agent of the insurance company testified that his company paid the loss claim, as a result of which the company became owner of the vehicle. He further testified that to the best of his knowledge no one had been authorized to use the automobile, and that he had not seen the automobile until he came to Oregon for the trial. When the jury was unable to reach a verdict, the court declared a mistrial and ordered another trial.

For the second trial, the state made no effort to obtain the presence of the two witnesses. Rather, on the morning of trial, the state offered evidence to show that the employee of the lot was in Calgary, Canada, and the agent of the insurance company who was normally in Canada was on vacation either there or in "the North Woods area of Bemidji, Minnesota."

The trial court, over defendant's objection, permitted the state to introduce transcripts of the prior trial testimony of both witnesses. Defendant assigns as error the admission of that evidence, contending that he was denied his right of confrontation of the witnesses under the Sixth Amendment to the United States Constitution and Article I, Section 11 of the Oregon Constitution.

[ 901 ]

The admissibility of testimony given in a former trial of the same cause by a witness who is unavailable for reason of being outside the nation is permitted by ORS 41.900(8) unless there is a constitutional doctrine otherwise. That statute provides:

"Evidence may be given of the following facts:

"* * * * *

"(8) The testimony of a witness, deceased, or out of state, or unable to testify, given in a former action, suit, or proceeding, or trial thereof, between the same parties, relating to the same matter."

Defendant's constitutional claim rests on *Barber v. Page*, 390 US 719, 88 S Ct 1318, 20 L Ed 2d 255 (1968). There the United States Supreme Court acknowledged the long-standing rule embodied in ORS 41.900(8) that the confrontation requirement did not apply where the witness was outside the jurisdiction, *i.e.,* beyond the territorial limits of the court's authority to compel attendance. The Supreme Court abrogated the rule, however, pursuant to the confrontation clause because the rule is anachronistic in light of recent state and federal legislation which provides means whereby jurisdictions may obtain witnesses from other state and federal American jurisdictions.[1]

The constitutional abrogation of the rule, however, is limited to domestic jurisdictions. In the later case of

---

[1] "* * * It must be acknowledged that various courts and commentators have heretofore assumed that the mere absence of a witness from the jurisdiction was sufficient ground for dispensing with confrontation on the theory that 'it is impossible to compel his attendance, because the process of the trial Court is of no force without the jurisdiction, and the party desiring his testimony is therefore helpless.' 5 Wigmore, Evidence § 1404 (3d ed 1940).

"Whatever may have been the accuracy of that theory at one time, it is clear that at the present time increased cooperation between the States themselves and between the States and the Federal Government has largely deprived it of any continuing validity in the criminal law.

"* * * In this case the state authorities made no effort to avail themselves of either of the above alternative means of seeking to secure Woods' presence at petitioner's trial. * * *" (Footnotes omitted.) *Barber v. Page,* 390 US 719, 723-24, 88 S Ct 1318, 20 L Ed 2d 255, 259-60 (1968).

*Mancusi v. Stubbs,* 408 US 204, 92 S Ct 2308, 33 L Ed 2d 293 (1972), the Supreme Court refused to extend the holding of *Barber v. Page* to witnesses who are beyond the authority of the court to compel attendance because they are in other nations. The court reasoned that domestic legislation which justifies abrogation of the rule among the states and federal government does not exist internationally. Therefore, the court held, the use of prior testimony of a witness who is in another country is not violative of the confrontation clause of the Sixth Amendment:

> "The Uniform Act to secure the attendance of witnesses from without a State, the availability of federal writs of habeas corpus and testificandum, and the established practice of the United States Bureau of Prisons to honor state writs of habeas corpus ad testificandum, all supported the Court's conclusion in Barber that the State had not met its obligations to make a good-faith effort to obtain the presence of the witness merely by showing that he was beyond the boundaries of the prosecuting State. There have been, however, no corresponding developments in the area of obtaining witnesses between this country and foreign nations. Upon discovering that Holm resided in a foreign nation, the State of Tennessee, so far as this record shows, was powerless to compel his attendance at the second trial, either through its own process or through established procedures depending on the voluntary assistance of another government. Cf. People v. Trunnell, 19 Cal App 3d 567, 96 Cal Rptr 810 (1971). We therefore hold that the predicate of unavailability was sufficiently stronger here than in Barber that a federal habeas court was not warranted in upsetting the determination of the state trial court as to Holm's unavailability. \* \* \*" *Mancusi v. Stubbs,* 408 US at 212-13.

The theory of the dissent is precisely that of the dissent in *Mancusi v. Stubbs*[2], which was perforce

---

[2] "\* \* \* If, as the Court contends, it is more difficult to produce at trial a resident of Sweden than a federal prisoner, that fact might justify a failure to produce the witness; it cannot justify a failure even to try. \* \* \*" *Mancusi v. Stubbs,* 408 US at 223 (dissent of Marshall, J.).

rejected by the majority and thus has no constitutional substance. The theory has appeal, but we are not free to rewrite either the constitution or the statute.

■■ Because there is no constitutional restriction upon the application of ORS 41.900(8) as it applies to the prior testimony of witnesses who are outside of the country, that statute controls and the transcript of the prior testimony of the two Canadian witnesses was correctly admitted.

■ Defendant also assigns as error the admission into evidence of Motor Vehicles Division records showing the license plates on the car defendant was found driving to be registered to a different car and owner. Defendant objected because he had requested discovery under ORS 135.815(4)(a) and these documents had not been furnished. The discovery statute was apparently violated, but the court nevertheless overruled the objection with no explanation. Hence we remand pursuant to *State v. Addicks*, 28 Or App 663, 560 P2d 1095 (1977).

Remanded for further proceedings.

**BUTTLER, J.**, dissenting.

The majority holds that a transcript of prior testimony of a witness in a criminal case may be admitted in evidence in a subsequent trial if that witness is then outside the United States, even though that witness might be willing to appear in person. Because I would prefer to reinforce, rather than dilute, the right of confrontation guaranteed by the Sixth Amendment to the United States Constitution and Art I, § 11, Oregon Constitution,[1] I dissent. I would hold, consistent with

---

[1] The Sixth Amendment to the United States Constitution provides:
   "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witness against him * * *."
   Art I, § 11, Oregon Constitution provides:
   "In all criminal prosecutions, the accused shall have the right * * * to meet the *witnesses face to face*, and to have compulsory process for obtaining witnesses in his favor * * *."

[ 904 ]

*Barber v. Page*, 390 US 719, 88 S Ct 1318, 20 L Ed 2d 255 (1968), that the state must exercise a good faith effort to obtain the presence of the witness in any case before it may successfully claim that the witness is unavailable.

In the trial court, and here, the state relies solely on the statute (ORS 41.900(8))[2] and the fact, confirmed on the day of trial, that the two key witnesses were out of state. It does not pretend that it made *any* effort, much less a good faith effort, to obtain the two witnesses who had appeared voluntarily at the first trial even though they resided in Canada. The trial judge ruled that since the witnesses were out of state, the transcript of their prior testimony was admissible.

In order to save the statute on which the state (and the majority), relies from constitutional infirmity, it is necessary to construe it to require that the state make a good faith effort to obtain the presence of an out-of-state witness before the transcript of prior testimony may be put in evidence. *Barber v. Page, supra.* In *Barber,* the question was whether testimony of an armed robbery accomplice adduced at a preliminary hearing could be introduced at defendant's trial in Oklahoma. At the time of trial the accomplice was in a federal prison in Texas. The United States Supreme Court held that despite the inability of the Oklahoma courts to compel the witness's attendance, the state was required to exercise a "good faith" effort to obtain his presence before it could rely on the "unavailability" exception to the confrontation requirement. The court noted that "the possibility of a refusal is not the equivalent of asking and receiving a rebuff," and then said:

---

[2] ORS 41.900(8) provides:

"Evidence may be given of the following facts:

"(8) The testimony of a witness, deceased, or out of the state, or unable to testify, given in a former action, suit, or proceeding, or trial thereof, between the same parties, relating to the same matter."

[ 905 ]

"In short, a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. The State made no such effort here, and, so far as this record reveals, the sole reason why Woods was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly." 390 US at 724-25.

The majority would have us believe that *Barber* applies only where the state has authority to compel attendance, which makes it easy to construe *Mancusi v. Stubbs*, 408 US 204, 92 S Ct 2308, 33 L Ed 2d 293 (1972), as the majority does, as holding that the good faith effort rule is inapplicable to "witnesses who are beyond the authority of the court to compel attendance because they are in other nations." 34 Or App at 903. The Court's holding in *Mancusi*, however, is not so broad. *Mancusi* involved the necessity of attempting to obtain a witness who testified at defendant's original trial for murder in Tennessee. Defendant had been convicted, but was released nine years later on federal habeas corpus on the ground that he had been inadequately represented by counsel. At the time of the second trial, the State of Tennessee attempted to subpoena its key witness at his last known address, which was in Texas. It was then learned that the witness had moved to Sweden from whence he had come. The Tennessee court determined that the witness was unavailable, and admitted his prior testimony in evidence. Defendant was convicted a second time and the Supreme Court of Tennessee affirmed. Again he sought release on federal habeas corpus on the ground he had been denied his Sixth Amendment right to confront the key witness against him. While the opinion is not entirely clear because of *dicta* (which is relied on by the majority here), the United States Supreme Court held that the Tennessee court's determination of unavailability should not be overturned; clearly, the state had made some effort to subpoena the witness. The Court expressed its holding:

"* * * We therefore hold that the predicate of un-availability was sufficiently stronger here than in Barber that a federal habeas court was not warranted in upsetting the determination of the state trial court as to Holm's unavailability." 408 US at 212-13.

I conclude from these cases that in a criminal case, before prior testimony of a living witness may be admitted in evidence under ORS 41.900(8), the state must lay a foundation for the offering by showing not only that the witness is out of the state, but that a good faith effort has been made to produce the witness at trial. If the witness is a foreign national residing in a foreign country, a lesser showing of diligence will satisfy the requirements of a good faith effort.[3]

In this case, it is not necessary to determine what is required to show a good faith effort because the state made absolutely no effort. As in *Barber*, so far as this record reveals, the sole reason why the witnesses were not present is that neither of them was even asked to be present. Both of them appeared at the first trial, and there is nothing in the record to indicate that neither of them would appear for the second trial. It is clear that the state assumed it would use the prior testimony relying solely on the statute, and did not contend below, and does not contend here, that it made a good faith effort to produce either of them.

Even if the majority's reading of *Barber* and *Mancusi* were correct, the opinion affirms prematurely. The evidence is that the office manager of the District Attorney's office called each of the witnesses on the morning of the trial. She testified that she talked to

---

[3] Although there is a paucity of decisions construing the Supreme Court's decison in *Mancusi v. Stubbs*, 408 US 204, 92 S Ct 2308, 33 L Ed 2d 293 (1972), some courts have, in *dicta*, addressed the issue of out-of-country witnesses. *Compare People v. Brown*, 47 Ill App 3d 616, 622, 365 NE2d 15 (1977), ("we would not require the State to make an effort to contact a witness that has moved to a foreign country if the State is powerless to compel his attendance at trial") *with State v. Kim*, 55 Haw 346, 350-51, 519 P2d 1241, 1244-45 (1974), ("a lesser showing of 'unavailability' seems constitutionally sufficient when the witness is residing within a foreign country."

one of them in Calgary, Alberta, Canada, but the other, an employee of the insurer of the automobile, was not in his office in "Manitoba, Canada." She talked to his supervisor, who told her the witness was "on vacation, to the best of his knowledge, in the area of Bemidji, Minnesota, on a camping trip." Accordingly, the evidence is that the witness was in Minnesota, U.S.A., not a foreign country. Since both Oregon (ORS 136.627) and Minnesota (Minn Stat Ann § 634.06 to 634.09 (1935), *amended* (1953) have adopted the uniform act to secure the attendance of witnesses without a state, this case falls squarely into *Barber* as the majority construes it.[4] Therefore, at least as to this witness, the state was required to make a good faith effort.

I would hold that under both the United States and Oregon Constitutions the trial court erred in admitting the prior testimony of the two witnesses without a showing of a good faith effort by the state to produce them. This error was a constitutional one, and I cannot say that it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 US 18, 87 S Ct 824, 17 L Ed 2d 705, 24 ALR3d 1065 (1967).

The right of confrontation under the Sixth Amendment includes not only the opportunity to cross-examine, but also includes "the occasion for the jury to weigh the demeanor of the witness." *Barber v. Page, supra,* 390 US at 725. When it is considered that when the two witnesses were present in person at the first trial of defendant the jury was unable to reach a verdict, but when they were not present at the second trial the jury convicted defendant, I do not think we should ignore, or even minimize, the second aspect of the right of confrontation.

---

[4]Furthermore, the state introduced in evidence the articles of incorporation of the insurer, which established that the insurer, Federated Mutual Insurance Company, was a Minnesota corporation with its principal office in that state. There is no showing that the absent witness was the only employee of the corporation who could testify on behalf of the insurer.

As a final note, I would hold that even if *Mancusi* squarely held that no good faith effort were required under the Sixth Amendment to the United States Constitution, it is, nevertheless, required under Art I, § 11, Oregon Constitution. While I agree that provisions in the Oregon Constitution similar to those in the United States Constitution ought to be construed the same way, *State v. Florance,* 270 Or 169, 527 P2d 1202 (1974), we ought not to permit our constitutional guarantees to be diluted by Laputan federal court decisions interpreting the United States Constitution, particularly where, as here, the underlying rationale for uniformity as expressed in *Florance* does not exist.[5]

---

[5]The rationale stated in *State v. Florance,* 270 Or 169, 527 P2d 1202 (1974), which related to warrantless searches, is that federal and state officers frequently work together and in many instances do not know whether their efforts will result in a federal or state prosecution, or both. Under such circumstances, the court said, two different rules would cause confusion. 270 Or at 184. No such confusion could exist with respect to the question involved here.